IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WENDY NEWCOMB, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:17-cv-11793 |
| Plaintiff, | ) ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) ) ) |  |
| Defendant. | ) |  |

On behalf of herself and all others similarly situated, Plaintiff Wendy Newcomb ("Plaintiff"), by and through her attorneys, respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a consumer class action brought for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") against Experian Information Solutions, Inc. ("Experian"), a national consumer reporting agency. In violation of the FCRA, Experian prepares and furnishes consumer reports that include Massachusetts state tax liens that have been paid, satisfied or released.

## PARTIES

2. Plaintiff Wendy Newcomb is an adult individual residing in Lunenburg, Massachusetts.

3. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

4. Defendant Experian is a "person" and "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b). Experian is authorized to do business in the State of Massachusetts, has

substantial contacts in this District, and is headquartered at 475 Anton Boulevard, Costa Mesa, CA 92626.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7. Experian is one of the "big three" credit reporting agencies in the United States.

8. Experian sells consumer reports (commonly called "credit reports") about millions of consumers annually.

9. Experian is regulated by the FCRA.

10. Experian routinely reports information about tax liens on consumer reports and continues to report tax liens for a specified number of years after they have been paid, satisfied or released.

11. On or about May 5, 2016, a Massachusetts state tax lien in the amount of $500 was entered against the property where Plaintiff lives in Worcester County, Northern District, Massachusetts.

12. On or about June 28, 2016, Plaintiff caused payment in full to be sent to the proper authority, and on July 18, 2016, the lien was released.

13. On or about August 4, 2016, Plaintiff's bank received a copy of her credit report that showed Experian was reporting the tax lien as unpaid, despite the fact it was released on July 18.

14. On or about August 8, 2017, more than a full year after the release of the lien, Plaintiff's bank again obtained a copy of her credit report and Experian was continuing to report the lien, still with a status of "NOT RELEASED."

15. The "Status Date" for the lien record listed on the August 2017 report was "06/16," which indicates that Experian had made no effort to check for updated public records on Plaintiff for over a year.

16. Despite the satisfaction of the tax lien, as reflected on Massachusetts public records, and pursuant to its usual and systemic practice, Experian did not remove the tax lien public record from Plaintiff's credit reports, nor update it to show it as satisfied, released or paid.

17. Massachusetts maintains online registries per county that are searchable by name or address. (*See* www.masslandrecords.com.) These records can be searched for free.

18. Worcester County, Northern District maintains its online searchable records at www.fitchburgdeeds.com, which is also accessible through the site www.masslandrecords.com, once "North Worcester" is selected as the County to search. These records can be searched for free.

19. If Plaintiff's name is entered into the search fields, two results appear. First, the initial recording of the lien, and second, the recording of that same lien's discharge. Also visible from the face of the search results are the applicable dates for the two records. Underlying documents are available to view or download via links connected to the search results, again, free of charge.



20. Both from the face of the search results and from the underlying records, it is clear that Plaintiff's tax lien has been paid and released. It is also clear that this release occurred in July 2016.

21. The FCRA provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

22. Experian is well aware that it has problems with failing to accurately report public record information. In fact, it has been sued multiple times for reporting out-of-date tax lien information in particular. *See Brown v. Experian Info. Sols., Inc.*, No. 16-cv-670 (E.D. Va.); *Camarata v. Experian Info. Sols., Inc.*, No. 16-cv-132 (S.D.N.Y.); *Clark v. Experian Info. Sols., Inc.*, No. 16-cv-32 (E.D. Va.); *Fuller v. Experian Info. Sols., Inc.*, No. 17-cv-740 (C.D. Cal.); *Glickman v. Experian Info. Sols., Inc.*, No. 17-cv-470 (E.D. Tex.); *Naher v. Experian Info. Sols., Inc.*, No. 17-cv-4812; *Rosbottom v. Experian Info. Sols., Inc.*, No. 16-cv-2832 (D.S.C.). These suits were filed well in advance of the reporting of Plaintiff's lien here.

23. Experian receives its public record information that it includes on its reports from a third party. Experian knows that the tax lien information it obtains from this third party is often inaccurate, out of date, and/or stale. Yet, Experian does not take any action to ensure that the information it receives is accurate before reporting it.

24. Experian knows that public records, and tax liens in particular, can greatly effect consumers' credit. This is evidenced by Experian, and the two other "big three" reporting agencies, agreeing to recently enforce rules on the public records they report. These rules restrict records from being reported that do not have fulsome identifying information available at the

source, and require the agencies to update public records information at least once every ninety (90) days.  (*See* www.nationalconsumerassistanceplan.com (last visited Aug. 17, 2017); Cowley, Stacy, "Your Credit Score May Soon Look Better," N.Y. TIMES, June 26, 2017 (available at www.nytimes.com/2017/06/26/business/dealbook/your-credit-score-may-soon-look-better.html).)

25.     These rules were supposed to be in effect as of July 1, 2017, a month prior to Experian's inaccurate reporting of Plaintiff's lien status, and a year after the date of the release of the lien public record.  However, the rules were clearly not in effect, because Plaintiff's lien was more than a year out of date, and the face of the report indicated the record had not been updated since June of 2016.

26.     Experian's failure to accurately report Plaintiff's tax lien occurred because Experian failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of reports.  Specifically, Experian does not obtain up to date information on the status of tax lien releases, even though such information is freely available online.

27.     Indeed, Experian has no systematic procedure to assure that, when tax liens are paid, satisfied or released, the updated status is promptly obtained and reflected upon a consumer's credit report.

28.     In the FAQs on its website, Experian acknowledges that outdated lien reporting is a problem, but attempts to put the onus on the consumer to correct any outdated lien information.  (*See* http://www.experian.com/blogs/ask-experian/updating-your-report-when-a-tax-lien-is-released/ ("[Tax lien status] should be updated automatically within a relatively short time.  However, if you need the update to be added immediately or find that it has not been received for our automatic update, you can send the tax lien release information yourself . . . The first step is to

get a copy of your personal credit to verify whether or not the status of the lien has been updated. If it has not, you can dispute the status stating that it should indicate the lien was released. You can do all of this easily and quickly online, and can upload the tax lien release documentation online as well. . . . With those documents, Experian should be able to update the status of the lien.").)

## CLASS ACTION ALLEGATIONS

29. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

30. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All consumers who: (i) had a tax lien recorded in the State of Massachusetts; (ii) the tax lien appeared on an Experian consumer report dated within two years prior to the filing of this Complaint and continuing through the resolution of this case; (iii) the State of Massachusetts public record indicated that the tax lien had been paid, satisfied, or released on a date prior to the date of the Experian consumer report, and (iv) the Experian consumer report incorrectly identified the tax lien as not released, unpaid, or with an unpaid balance.

31. **Numerosity and Ascertainability.** The class members are so numerous that joinder of all is impractical. Although the precise number of class members is known only to Experian, there are tens of thousands of recorded tax liens in Massachusetts.

32. Experian possesses data for consumers that include name, address, date of birth, Social Security Number, case numbers/lien identifiers, lien amounts, jurisdiction of liens, disposition of the liens, date of file in public record, date of disposition in public record, and dates consumers had credit inquiries where such information was reported. Experian is able to produce this data in standardized spreadsheet form.[1]

---

[1] *See* ECF No. 44, *Rosbottom v. Experian Info. Sols., Inc.*, No. 16-cv-02832 (D.S.C. Aug. 9, 2017).

33. Massachusetts, in turn, maintains electronic records of liens, easily accessible and reviewable, that are searchable by name, and include record descriptions, file dates, disposition dates, lien identifiers, and other identifying information.

34. The Massachusetts data can be easily compared to Experian's data to ascertain which consumers would meet the definition of the Class above.

35. Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

   a. Whether Experian willfully violated the FCRA by reporting tax liens which, according to Massachusetts public records, were paid; and

   b. Whether Experian willfully violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the Massachusetts tax lien information it reported.

36. Typicality. Plaintiff's claims are typical of the claims of each class member, which all arise from the same operative facts and are based on the same legal theories. Experian reports tax liens that have been paid, satisfied or released without reporting their paid, satisfied or released status. Plaintiff has the same claims for statutory, actual and punitive damages that she seeks for absent class members.

37. Adequacy. Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent. She has retained counsel competent and experienced in such litigation, and intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the

interests of members of the Class.

38.     Predominance and Superiority.  Questions of law and fact common to the class members predominate over questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Experian's conduct described in this Complaint stems from common and uniform practices, resulting in common violations of the FCRA.  Members of the Class do not have an interest in pursuing separate actions against Experian, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's practices.  Moreover, management of this action as a class action will not likely present any difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

39.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

### **CAUSE OF ACTION**
### **15 U.S.C. § 1681e(b)**

40.     Plaintiff incorporates by reference all preceding paragraphs as alleged above.

41. Experian failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the tax lien information in the consumer reports it prepared regarding Plaintiff and the other class members.

42. The foregoing violations were negligent.

43. The foregoing violations were willful.

44. Experian acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and class members under 15 U.S.C. § 1681e(b). Experian's negligent and willful conduct is reflected by, *inter alia*, the following:

   (a) The FCRA was enacted in 1970, thus Experian has had over 40 years to become compliant;

   (b) Experian knew that its conduct violated the FCRA, evidenced by, *inter alia*:

   (i) Experian has been sued multiple times for reporting outdated tax lien information, *see*, *e.g.*, *Brown v. Experian Info. Sols., Inc.*, No. 16-cv-670 (E.D. Va.); *Camarata v. Experian Info. Sols., Inc.*, No. 16-cv-132 (S.D.N.Y.); *Clark v. Experian Info. Sols., Inc.*, No. 16-cv-32 (E.D. Va.); *Fuller v. Experian Info. Sols., Inc.*, No. 17-cv-740 (C.D. Cal.); *Glickman v. Experian Info. Sols., Inc.*, No. 17-cv-470 (E.D. Tex.); *Naher v. Experian Info. Sols., Inc.*, No. 17-cv-4812; *Rosbottom v. Experian Info. Sols., Inc.*, No. 16-cv-2832 (D.S.C.);

   (ii) Experian is part of the recently implemented National Consumer Assistance Plan, which the purpose of, among other things, is to address issues with public record data inaccuracies, and puts in place restrictions on what public record information can be reported depending on what is

      available at the source, and requiring public records to be updated by Experian at least once every ninety (90) days;

(c)   Experian never consulted the records' sources to determine the current status of the liens, even though those records were readily available and would have shown that class members' liens had in fact been paid, released, or discharged (in Plaintiff's case, over a year prior to the date Experian reported it as "NOT RELEASED");

(d)   Experian instructs consumers through the FAQs on its website to take it on themselves to update Experian's lien records it is reporting, by implication illustrating that it does not have any systematic process to fulfill its obligation to keep the public record information it reports up to date;

(e)   Experian's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute; and

(f)   By adopting such a policy, Experian voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

45.   Experian's inaccurate reporting of Plaintiff and class members' lien information harmed, and/or created a risk of real harm to, their concrete interests under the FCRA.

46.   Pursuant to 15 U.S.C. §§ 1681n, o, Experian is liable to Plaintiff and the Class for its failure to comply with §1681e(b), in an amount equal to the sum of: (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorneys' fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A.  An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.  A permanent injunction requiring Experian to: (1) cease reporting inaccurate public record information about Massachusetts consumers; (2) regularly update the public record information it obtains and reports about Massachusetts consumers on at least a monthly basis;

C.  An award of statutory, actual and punitive damages for Plaintiff and the Class;

D.  An award of pre-judgment and post-judgment interest as provided by law;

E.  An award of attorneys' fees and costs; and,

F.  Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

LICHTEN & LISS-RIORDAN, P.C.

Date: September 19, 2017

/s/ Harold L. Lichten
Harold L. Lichten (SBN 549689)
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel.: 617.994.5800
hlichten@llrlaw.com

BERGER & MONTAGUE, P.C.
E. Michelle Drake*
Joseph C. Hashmall*
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
emdrake@bm.net

jhashmall@bm.net
*pro hac vice forthcoming*

ATTORNEYS FOR PLAINTIFF